## 42154. FORD v. THE STATE.
### (362 SE2d 764)

SMITH, Justice.

*Ford v. State*, 255 Ga. 81 (355 SE2d 567) (1985), was pending before the Supreme Court of the United States when *Griffith v. Kentucky*, 479 U. S. ___ (107 SC 708, 93 LE2d 649) (1987), was decided on January 13, 1987. *Griffith* established the principle that the ruling in *Batson v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986), applied retroactively to all cases, state or federal, pending on direct review when *Batson* was decided. Thus, in keeping with *Griffith*, supra, the Supreme Court of the United States vacated its grant of Ford's petition for writ of certiorari, U. S. Supreme Court Case No. 85-6253, and on March 25, 1987, remanded the case to the Supreme Court of Georgia for further consideration in light of *Griffith v. Kentucky*, supra.

1. *Batson* stands for the principle that a prosecutor may not strike a black juror solely because of his race, nor upon any assumption based solely upon the juror's race. 106 SC at 1723. See *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987).

2. In *Batson*, the defense counsel moved to discharge the jury before it was sworn on the ground that the prosecutor's removal of the black veniremen, through the use of peremptory challenges, violated his 6th and 14th Amendment rights. The *Batson* Court observed that, "[the] petitioner made a timely objection to the prosecutor's removal of all black persons on the venire." Id. at p. 1725. The Court also observed: "In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today." Id. at p. 1724, fn. 24. It went on to state that it expressed no view as to how a court should handle the matter, upon a finding of discrimination against black jurors, but made it clear that it must be handled in such a manner as to erase the discrimination in the jury selection.

3. *Batson* may be understood to require that any objection as to peremptory strikes be made *before* the trial of the case begins. This is further supported by *Griffith*, supra, 107 SC at p. 710, where the facts show that the motion to discharge the panel based upon a discriminatory selection of jurors was made immediately after the selection process was completed and before trial had begun. It is consistent with our holding in *State v. Sparks*, 257 Ga. 97, 98 (355 SE2d 658) (1987), where we held that "any claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn."

4. In this case, Ford filed a "Motion To Restrict Racial Use of

Peremptory Challenges."[1] This motion was based on the law as it existed at that time under *Swain v. Alabama*, 380 U. S. 202 (85 SC 824, 13 LE2d 759) (1965) — that is, that the defendant must show a pattern of systematic exclusion of blacks as jurors in criminal trials within the circuit. Ford offered no proof of his contentions.

(a) The trial court denied the motion on October 10th, ten days before the trial began. In commenting upon this denial on the second day of the trial, the judge stated that he had seen "numerous or several cases" in which there were black defendants and the district attorney's office struck white prospective jurors and left prospective black jurors on the jury. "I have seen that happen here and in other counties in the circuit."

(b) After the jury had been selected and sworn in, the trial court afforded the defense an opportunity to make any necessary motions. None were made.

(c) In the direct appeal from Ford's conviction, this court found that he had failed to demonstrate a pattern of systematic exclusion of blacks from criminal juries in the circuit. *Ford v. State*, 255 Ga., supra at 83 (1).

5. Under *Griffith*, it is now unquestioned that Ford may insist upon the *Batson* issue, notwithstanding that his conviction preceded the date of that opinion.

But nothing in *Griffith* would warrant the extension of relief *upon grounds never raised at trial.* Indeed, all that *Griffith* dictates is that objections made — at trial — must be resolved under the *Batson* rule, whether or not they antedated the enunciation of that rule.[2]

---

[1] The motion was as follows: "Now comes JAMES FORD, the Defendant in the above styled action, and moves the Court to restrict the Prosecution from using it's peremptory challenges in a racially biased manner that would exclude members of the black race from serving on the Jury. In support of this Motion, the Defendant shows:
1.
"The Prosecutor has over a long period of time excluded members of the black race from being allowed to serve on the Jury where the issues to be tried involve members of the opposite race.
2.
"This case involves a black accused and the victim is a member of the white race.
3.
"It is anticipated that the Prosecutor will continue his long pattern of racial discrimination in the exercise of his peremptory strikes.
4.
"The exclusion of members of the black race in the Jury when a black accused is being tried is done in order that the accused will receive excessive punishment if found guilty, or to inject racial prejudice into the fact finding process of the Jury. See *McCray vs. New York*, ___ U. S. ___, 33 Cr. L. 4067 (82-1381, May 31, 1983). *Taylor vs. Louisiana*, 419 U. S. 522 (1975).
"WHEREFORE, the Defendant prays that this Court enter an Order granting the relief requested herein."
[2] "We therefore hold that a new rule for the conduct of criminal prosecutions is to be

6. We have delineated a time period within which a *Batson* motion is timely.

(a) In *State v. Sparks*, supra, we allowed as timely a *Batson* motion that was made shortly after the jurors had been sworn. We held that "hereafter any claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn." In *Riley v. State*, 257 Ga. 91, 94 (3) (355 SE2d 66) (1987) we held as untimely a *Batson* motion that was made after the jury had been sworn and five witnesses had testified.

(b) Ford made no contemporaneous objection to the composition of the jury as selected. His pre-trial motion was not an objection to the jury as selected, but to an alleged pattern of systematic exclusion of black jurors. There was no objection made after the jury was sworn.

(c) Further, even if colloquy in the trial judge's chambers on the second day of trial might be interpreted as a *Batson* motion, it would not have been timely under *Riley v. State*, supra.

7. The determinative issue thus becomes whether our contemporaneous objection rule is a valid state procedural bar to Ford's *Batson* complaint.

In *Wainwright v. Sykes*, 433 U. S. 72, 90, (97 SC 2497, 53 LE2d 594) (1977), the United States Supreme Court held:

"A defendant has been accused of a serious crime, and [the trial] is the time and place for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the results that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification."

8. We now conclude this matter as follows:

(a) Ford's motion under *Swain*, having been decided adversely to him on appeal, cannot be reviewed in this proceeding. *Ford v. State*, supra.

(b) While the circumstances of the jury selection may raise implications under *Batson*, and are not precluded from review under the

applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith*, 107 SC at ___.

authority of *Griffith,* Ford made no objection to the composition of the jury after it was selected and before the trial commenced.

(c) The rules of our state require that a defendant who questions the composition of his trial jury must make objection "prior to the time the jurors selected to try the case are sworn." *Sparks,* supra.

(d) The failure of Ford timely to object is a valid state procedural bar to any complaint he may have under *Batson. Wainwright v. Sykes,* supra.

9. Upon remand from the United States Supreme Court, we adhere to our initial judgment of affirmance.

*Judgment affirmed upon remand. All the Justices concur, except Gregory and Hunt, JJ., who dissent.*

GREGORY, Justice, dissenting.

Prior to trial, Ford filed a motion asking the trial court "to restrict the Prosecution from using its peremptory challenges in a racially biased manner that would exclude members of the black race from serving on the jury." This motion was denied by the trial court. Subsequently, the prosecutor exercised nine of his ten peremptory challenges against blacks.

On direct appeal, this court, like the trial court, ruled on the issue without having the benefit of the pronouncement of the United States Supreme Court in the since-decided case of *Batson v. Kentucky,* 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986). See *Ford v. State,* 255 Ga. 81 (1) (355 SE2d 567) (1985). Now, having held that *Batson* applies retroactively to cases, such as this one, that were tried prior to *Batson* but were still pending on direct appeal when *Batson* was decided, *Griffith v. Kentucky,* 479 U. S. ___ (107 SC 708, 93 LE2d 649) (1987), the United States Supreme Court has remanded the case to us for reconsideration under *Batson.*

Today, the majority of this court holds that because Ford raised the discrimination issue before the jury selection began, it was not timely, or was not really a *Batson*-type objection at all.

While I agree that "nothing in *Griffith* would warrant the extension of relief *upon grounds never raised at trial . . ."* (majority at p. 662), I cannot agree that Ford never raised a *Batson*-type claim, nor do I think that we may avoid addressing the merits of a *Batson* issue that was raised at trial on the ground that it was raised too soon under a procedural rule of timeliness that we created *after* the case was tried.

I do not doubt that we may establish procedural rules regarding the correct time to raise *Batson* claims. But other than the general rule that issues cannot be raised for the first time after trial, no procedural rules governing the raising of *Batson* claims were in existence when Ford's case was tried, for the very simple reason that *Batson*

had not yet been decided.

We say now that the *Batson* claim should have been raised after the jury was selected. There is nothing wrong with this rule. However, Ford had no way of knowing but what if he had waited until after the jury was selected to raise the issue, we would have held that he waited too late; that he should have raised the issue prior to trial, so that the prosecutor would be on notice that his exercise of peremptory challenges would be scrutinized for racial discrimination.

Because the procedural rule on which the majority relies to avoid reaching the merits of Ford's *Batson* claim did not exist when Ford's case was tried, it cannot possibly be "the sort of firmly established and regularly followed state practice that can prevent implementation of [Ford's] federal constitutional rights." *James v. Kentucky*, 466 U. S. 341 (104 SC 1830, 80 LE2d 346) (1984). Moreover, such an "unannounced" and "novel application of a procedural bar of which [Ford] 'could not fairly be deemed to have been apprised . . .' [Cit.]" will not bar "federal habeas review of this claim . . ." *Mann v. Dugger*, 817 F2d 1471 (11th Cir. 1987).

Prior to trial, Ford moved the trial court to restrict the prosecutor from exercising his peremptory challenges in a racially discriminatory manner. The trial court denied the motion. After the jury was selected, the prosecutor offered to explain his peremptory challenges. The trial court ruled that such a proffer would be unnecessary, notwithstanding that the prosecutor had exercised nine of his ten peremptory challenges against blacks.

Inasmuch as *Batson* had not been decided when this case was tried, the trial court's rulings were understandable. Nonetheless, under *Batson* they were erroneous.

I dissent to the majority opinion. I would remand this case to the trial court to give the prosecutor an opportunity to rebut the prima facie case of discrimination under *Batson*.

I am authorized to state that Justice Hunt joins in this dissent.

DECIDED NOVEMBER 30, 1987 —
RECONSIDERATION DENIED DECEMBER 16, 1987.

*Harvey & Jarnigin, Nelson Jarnigin*, for appellant.

*William G. Hamrick, Jr., District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General*, for appellee.