# FORD *v.* GEORGIA

No. 87–6796.   Argued November 6, 1990—Decided February 19, 1991

412

SOUTER, J., delivered the opinion for a unanimous Court.

*Charles J. Ogletree* argued the cause for petitioner. With him on the brief were *Bryan A. Stevenson, James E. Coleman, Jr.,* and *Joseph E. Killory, Jr.*

*Paula K. Smith,* Assistant Attorney General of Georgia, argued the cause for respondent. With her on the brief were *Michael J. Bowers,* Attorney General, *William B. Hill, Jr.,* Deputy Attorney General, and *Susan V. Boleyn,* Senior Assistant Attorney General.

JUSTICE SOUTER delivered the opinion of the Court.

Petitioner alleges that the State of Georgia applied the impermissible criterion of race to exclude venire members from the petit jury that convicted him. The Supreme Court of Georgia held petitioner's equal protection claim procedurally barred as untimely under Georgia law, and we are now called upon to review the adequacy of the State's procedural rule to bar consideration of the constitutional issue raised. We reverse.

I

In September 1984, a grand jury in Coweta County, Georgia, indicted petitioner James A. Ford, a black man, for the kidnaping, rape, and murder of a white woman.[1] The State notified petitioner of its intent to seek the death penalty and identified the statutory aggravating circumstances it would try to prove.

Before trial, petitioner filed a "Motion to Restrict Racial Use of Peremptory Challenges,"[2] alleging that the prosecu-

---

[1] The indictment included five counts: murder (count 1); rape (count 2); kidnaping (count 3); armed robbery (count 4); and burglary (count 5).

[2] Petitioner's motion, filed on October 9, 1984, reads:

"Now comes JAMES FORD, the Defendant in the above styled action, and moves the Court to restrict the Prosecution from using its peremptory

tor for Coweta County had "over a long period of time" excluded black persons from juries "where the issues to be tried involved members of the opposite race." The motion stated that petitioner "anticipated" the prosecutor would continue the pattern of racial exclusion in this case because of the different races of the accused and the victim. Petitioner requested an order forbidding the State to use "its peremptory challenges in a racially biased manner that would exclude members of the black race from serving on the Jury." App. 3–4.

At a pretrial hearing on the motion, petitioner's counsel said that his experience had been, "and the Court is aware[,] that the district attorney and the other assistant district attorneys have a history and a pattern when you have a defendant who is black, of using their per-emptory [sic] challenges to excuse potential jurors who are also black." Petitioner's counsel asked the trial judge to discourage further resort to this alleged practice by requiring "the district attorney, if he does use his peremptory challenges to excuse potential black

---

challenges in a racially biased manner that would exclude members of the black race from serving on the Jury. In support of this Motion, the Defendant shows:

"1.

"The Prosecutor has over a long period of time excluded members of the black race from being allowed to serve on the Jury where the issues to be tried involve members of the opposite race.

"2.

"This case involves a black accused and the victim is a member of the white race.

"3.

"It is anticipated that the Prosecutor will continue his long pattern of racial discrimination in the exercise of his peremptory strikes.

"4.

"The exclusion of members of the black race in the Jury when a black accused is being tried is done in order that the accused will receive excessive punishment if found guilty, or to inject racial prejudice into the fact finding process of the jury. See McCray vs. New York, [461 U. S. 961 (1983)]. Taylor vs. Louisana (sic), 419 U. S. 522 (1975)." App. 3–4.

jurors, to justify on the record the reason for his excusing them." Any failure of the prosecutor to offer such a justification on the record, petitioner's counsel argued, "would evidence the fact that he is using [his peremptory challenges] in a discriminatory manner." App. 10.

The prosecution opposed the motion, denying that petitioner could prove that prosecutors in previous cases had challenged black jurors impermissibly. "[I]n practically every trial we have in this county," the prosecutor observed, "there are always blacks on trial juries, and an all white jury is rare in any county." He directed the judge's attention to this Court's decision in *Swain* v. *Alabama*, 380 U. S. 202 (1965), and argued that under *Swain* "it would be an unreasonable burden to require an attorney for either side to justify his use of peremptory challenges." App. 10–11.

The trial judge responded that on "numerous or several" occasions "I've seen cases in which there are, have been black defendants and the district attorney's office has struck perspective (sic) white jurors and left perspective (sic) black jurors on the jury. . . . I have seen it done and I can't sit here and document them and I have not documented them, but it's been on more than one occasion." The trial judge concluded that he was "taking that [observation] into consideration among other things and denying the motion to restrict racial use of peremptory challenges." *Id.*, at 11–12.

The trial began 10 days later. Although the jury selection on the first day was not transcribed, it is undisputed that the prosecution exercised 9 of its 10 peremptory challenges to strike black prospective jurors, leaving 1 black venire member seated on the jury. A black potential alternate juror was challenged not by the State but by petitioner.[3]

---

[3] By statute, Georgia allots 20 peremptory challenges to "[e]very person indicted for a crime or offense which may subject him to death or to imprisonment for not less than four years." Ga. Code Ann. § 15–12–165 (1990). The State is allotted 10 peremptory challenges in such cases. *Ibid.*

On the second day of the trial, both petitioner and respondent made their opening statements, after which the State presented eight witnesses before the noon recess. At the start of the afternoon session, the trial judge called a conference in chambers to discuss, among other things, petitioner's prior motion about "the State's using all their strikes to strike blacks from being on the jury."[4] Although the judge noted that the State had not used all of its peremptory challenges to strike black venire members and had left a black person on the jury, petitioner's counsel observed for the record that the State had used 9 of its 10 challenges to strike black venire members. The trial judge concurred: "That's what happened in the jury selection process. I just think that needs to be put in since that motion was made. Of course, the motion has been denied. . . ." The prosecutor asked the court whether he needed to make any showing of the reasons he had exercised the State's challenges. The trial judge answered that he was not asking for any, and none was made. *Id.*, at 15–16.

After the jury had convicted petitioner on all counts and he had been sentenced to death, his counsel moved for a new trial claiming, *inter alia*, that petitioner's "right to an impartial jury as guaranteed by Sixth Amendment to the United States Constitution was violated by the prosecutor's exercise of his peremptory challenges on a racial basis." *Id.*, at 7–8. The motion was denied.

On appeal, the Supreme Court of Georgia at one point interpreted petitioner's claim as one "that the prosecutor's use of peremptory strikes to remove 9 of 10 possible black jurors denied Ford his right to a jury comprised of a fair cross-section of the community." Although the court thereby

---

[4] Petitioner and respondent disagree on whether, at the time of jury selection, petitioner renewed his motion alleging the prosecution's use of racially discriminatory peremptory challenges. Its renewal during jury selection is not a fact necessary to our decision, and we therefore assume for purposes of discussion that petitioner did not press the motion again.

referred to the Sixth Amendment concept of a "fair cross-section of the community," see, *e. g., Taylor* v. *Louisiana,* 419 U. S. 522, 526–533 (1975), it also found that petitioner had failed to prove the "'systematic exclusion of black jurors'" from service, and thus alluded to the standard for establishing an equal protection violation first described in *Swain* v. *Alabama, supra.* *Ford* v. *State,* 255 Ga. 81, 83, 335 S. E. 2d 567, 572 (1985) (quoting *Moore* v. *State,* 254 Ga. 525, 529, 330 S. E. 2d 717, 721 (1985)). The court found no error and affirmed petitioner's conviction.

Petitioner filed his first petition for certiorari with this Court on January 22, 1986. While it was before us, we held in *Batson* v. *Kentucky,* 476 U. S. 79 (1986), that a black criminal defendant could make a prima facie case of an equal protection violation with evidence that the prosecutor had used peremptory challenges in that case to strike members of the defendant's race from the jury. Although we soon held in *Allen* v. *Hardy,* 478 U. S. 255 (1986), that *Batson*'s new evidentiary standard would not be applied retroactively on collateral review of convictions that had reached finality before *Batson* was announced, we subsequently held in favor of the new standard's retroactive application to all cases pending on direct review or not yet final when *Batson* was decided. *Griffith* v. *Kentucky,* 479 U. S. 314, 328 (1987). We then granted Ford's petition for certiorari and vacated and remanded for further consideration in light of *Griffith. Ford* v. *Georgia,* 479 U. S. 1075 (1987).

On remand, the Supreme Court of Georgia held *sua sponte,* without briefing or arguments from the parties, that petitioner's equal protection claim was procedurally barred. 257 Ga. 661, 362 S. E. 2d 764 (1987). The court concluded that before his trial petitioner had raised a *Swain* claim that was "decided adversely to him on appeal, [and] cannot be reviewed in this proceeding." 257 Ga., at 663, 362 S. E. 2d, at 766. The court then suggested that a *Batson* claim was "never raised at trial," 257 Ga., at 662, 362 S. E. 2d, at 765

(emphasis omitted), but went on to consider whether any such claim raised either in petitioner's pretrial motion or during the chambers conference on the second day of the trial could be treated as timely. The court applied the state procedural rule announced in *State* v. *Sparks*, 257 Ga. 97, 98, 355 S. E. 2d 658, 659 (1987), that a *Batson* claim must "be raised prior to the time the jurors selected to try the case are sworn." Reading *Sparks* as requiring a contemporaneous objection to a defendant's jury "after it was selected and before the trial commenced," the court concluded that petitioner had failed to make such an objection, with the result that any *Batson* claim was barred by a valid state procedural rule. 257 Ga., at 663–664, 362 S. E. 2d, at 766. A dissenting opinion took issue with the court's conclusion that petitioner "never raised a *Batson*-type claim," and with the court's application of a state procedural rule that had not been announced when petitioner's motion was filed in 1984. *Id.*, at 664, 362 S. E. 2d, at 767.

We granted certiorari to decide whether the rule of procedure laid down by the Supreme Court of Georgia in *Sparks* was an adequate and independent state procedural ground that would bar review of petitioner's *Batson* claim. 495 U. S. 903 (1990).

## II

### A

The threshold issues are whether and, if so, when petitioner presented the trial court with a cognizable *Batson* claim that the State's exercise of its peremptory challenges rested on the impermissible ground of race in violation of the Equal Protection Clause of the Fourteenth Amendment. We think petitioner must be treated as having raised such a claim, although he certainly failed to do it with the clarity that appropriate citations would have promoted. The pretrial motion made no mention of the Equal Protection Clause, and the later motion for a new trial cited the Sixth Amendment, not the Fourteenth.

The pretrial motion did allege, however, that the prosecution had engaged in a pattern of excluding black persons from juries "over a long period of time," and petitioner argued to this effect at the hearing on this motion as well as at the hearing on his motion for a new trial. This allegation could reasonably have been intended and interpreted to raise a claim under the Equal Protection Clause on the evidentiary theory articulated in *Batson*'s antecedent, *Swain* v. *Alabama*, 380 U. S. 202 (1965). The Court in *Swain* recognized that an equal protection violation occurs when the State uses its peremptory challenges for the purpose of excluding members of a black defendant's race from his petit jury, *id.*, at 209; *Batson* v. *Kentucky, supra,* at 90; but *Swain* also established a rigorous standard for proving such a violation, holding it "permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying . . . ." 380 U. S., at 223. That assumption could not be overcome, and the State required to justify its use of peremptory challenges in a particular case, without proof that the prosecutor, "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim . . . [, was] responsible for the removal of Negroes who ha[d] been selected as qualified jurors by the jury commissioners and who ha[d] survived challenges for cause, with the result that no Negroes ever serve on petit juries." *Id.,* at 223–224.

Our interpretation of petitioner's reference to a pattern of excluding black venire members "over a long period of time" as the assertion of a *Swain* claim was, in fact, adopted in the Georgia courts. The prosecutor himself cited *Swain* to the trial court in opposing the pretrial motion; the trial judge clearly implicated *Swain* in ruling that petitioner had failed to prove the systematic exclusion of blacks from petit juries; and the second opinion of the Supreme Court of Georgia in this case explicitly stated that petitioner had raised a *Swain*

claim, upon the merits of which he had lost on his first appeal. 257 Ga., at 663, 362 S. E. 2d, at 765–766.

The State, indeed, concedes that petitioner properly raised a *Swain* claim in his pretrial motion, Tr. of Oral Arg. 40, but in proceeding to argue that the motion was insufficient to raise a claim under *Batson*, the State assumes a distinction between the holdings in those two cases that does not exist. Both *Swain* and *Batson* recognized that a purposeful exclusion of members of the defendant's race from the jury selected to try him would work a denial of equal protection. To prevail on such an equal protection claim under *Swain*, as just noted, this Court indicated that a defendant must show a pattern of racial discrimination in prior cases as well as in his own. Because the petitioner in *Swain* had failed to prove purposeful racial discrimination in prior instances of jury selection, we held that he had "not laid the proper predicate for attacking the peremptory strikes as they were used in [his] case." 380 U. S., at 226. *Batson* dropped the *Swain* requirement of proof of prior discrimination, holding it possible for a defendant to make out a prima facie equal protection violation entirely by reference to the prosecution's use of peremptory challenges in the circumstances of the defendant's own case. 476 U. S., at 92–98.

Because *Batson* did not change the nature of the violation recognized in *Swain*, but merely the quantum of proof necessary to substantiate a particular claim, it follows that a defendant alleging a violation of equal protection of the law under *Swain* necessarily states an equal protection violation subject to proof under the *Batson* standard of circumstantial evidence as well. Thus, from the determination by the Supreme Court of Georgia that petitioner raised a claim under *Swain*, it follows that he raised an equal protection claim subject to the more lenient burden of proof laid down in *Batson*.[5]

---

[5] The Supreme Court of Georgia's second opinion includes the statement that petitioner's "pre-trial motion was not an objection to the jury as se-

## B

We now face the question whether Georgia can bar consideration of that *Batson* claim as untimely raised. If we were to focus only on the fact of the state court's conclusion that petitioner had raised a *Swain* claim, the issue of the *Batson* claim's timeliness under state law could be resolved with the simplicity of a syllogism. Under Georgia's precedent, its Supreme Court will review a constitutional claim on the merits only if the record is clear that the claim "was directly and *properly* made in the court below and distinctly passed upon by the trial judge." *Atlanta* v. *Columbia Pictures Corp.*, 218 Ga. 714, 719, 130 S. E. 2d 490, 494 (1963) (emphasis added). The fact that the court reviewed petitioner's *Swain* claim on the merits, as noted in the court's second opinion, therefore presupposes the claim's timeliness. Because *Bat-*

lected." 257 Ga. 661, 663, 362 S. E. 2d 764, 766 (1987). This suggests the possibility that the state court did not read *Swain* v. *Alabama*, 380 U. S. 202 (1965), as requiring an objection to the particular jury selected to try the objecting defendant, and raises the question whether the Supreme Court of Georgia might now hold that petitioner's objection was insufficiently specific to his own jury to raise either a *Swain* or a *Batson* v. *Kentucky*, 476 U. S. 79 (1986), claim. We think such a reading of petitioner's motion and the proceedings below would be as impermissible as a reading of *Swain* without the requirement of proving discrimination in the selection of an objecting defendant's own jury. *Swain* described a defendant's burden to prove systematic discrimination as a predicate to attacking the use of peremptory challenges in his own case, 380 U. S., at 226, and the anticipation of unconstitutional challenges in his own case was the focus of petitioner's pretrial motion. What petitioner did not, and could not, do by anticipatory objection was allege the exact number of impermissible challenges or any other details of the jury selection that might support an inference of discriminatory purpose. But the State has never argued that the pretrial motion, which correctly anticipated challenges to a substantial proportion of the black venire members, was inadequate for either or both of these reasons. The State has, in fact, conceded that the trial judge was not misled into thinking that petitioner objected to anything other than the use of racially discriminatory peremptory challenges in the selection of the jury in this case. Tr. of Oral Arg. 31–32.

*son* merely modified the allegations and evidence necessary to raise and prove the equal protection claim in question, it would be reasonable to conclude that the state court's concession of timeliness under *Swain* must govern its treatment of the *Batson* claim as well.

The Supreme Court of Georgia, nonetheless, rested its contrary conclusion on the rule announced in *State* v. *Sparks*, that "hereafter, any claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn." 257 Ga., at 98, 355 S. E. 2d, at 659. Although this language clearly sets the time after which a *Batson* claim would be too late, it did not so clearly set a time before which such a claim would be premature. The second Georgia opinion in this case, however, makes it obvious that the court understood *Sparks* to require an objection to be raised after the jurors are chosen. Thus, the court noted that petitioner made "no contemporaneous objection to the composition of the jury as selected," 257 Ga., at 663, 362 S. E. 2d, at 766, and "no objection to the composition of the jury after it was selected and before the trial commenced." *Id.*, at 664, 362 S. E. 2d, at 766. We assume that these observations by the court announced no new refinement of *Sparks*, but merely reflected the better reading of its opinion as originally written. In any event, the Georgia court regarded *Sparks* as so interpreted to be a "valid state procedural bar" to petitioner's claim, citing our decision in *Wainwright* v. *Sykes*, 433 U. S. 72 (1977), thus apparently deciding the federal question whether the *Sparks* procedural rule bars federal review of petitioner's claim.[6]

The requirement that any *Batson* claim be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule.

---

[6] We do not read the opinion of the Supreme Court of Georgia as announcing a refusal to entertain the *Batson* claim in the Georgia courts in the event of our holding that a claim was raised and is open to federal consideration.

The imposition of this rule is nevertheless subject to our standards for assessing the adequacy of independent state procedural grounds to bar all consideration of claims under the national Constitution. A review of these standards reveals the inadequacy of Georgia's rule in *Sparks* to foreclose consideration of the *Batson* claim in this case.

The appropriateness in general of looking to local rules for the law governing the timeliness of a constitutional claim is, of course, clear. In *Batson* itself, for example, we imposed no new procedural rules and declined either "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," or to decide when an objection must be made to be timely. 476 U. S., at 99–100. Instead, we recognized that local practices would indicate the proper deadlines in the contexts of the various procedures used to try criminal cases, and we left it to the trial courts, with their wide "variety of jury selection practices," to implement *Batson* in the first instance. *Id.*, at 99, n. 24. Undoubtedly, then, a state court may adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected.

In any given case, however, the sufficiency of such a rule to limit all review of a constitutional claim itself depends upon the timely exercise of the local power to set procedure. "Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 457–458 (1958). In the *NAACP* case, we declined to apply a state procedural rule, even though the rule appeared "in retrospect to form part of a consistent pattern of procedures," because the defendant in that case could not be "deemed to have been apprised of its existence." *Id.*, at 457. In *James* v. *Kentucky*, 466 U. S. 341 (1984), we held that only a "firmly established

and regularly followed state practice" may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim. *Id.*, at 348–351; see also *Barr* v. *City of Columbia*, 378 U. S. 146, 149 (1964) (state procedural rules "not strictly or regularly followed" may not bar our review); *NAACP* v. *Alabama ex rel. Flowers*, 377 U. S. 288, 297 (1964) (procedural rule no bar to our review when state court had never applied it with the "pointless severity shown here").

The Supreme Court of Georgia's application of its decision in *Sparks* to the case before us does not even remotely satisfy the requirement of *James* that an adequate and independent state procedural bar to the entertainment of constitutional claims must have been "firmly established and regularly followed" by the time as of which it is to be applied. At the time of petitioner's trial, Georgia's procedural law was just what it was when the *Sparks* defendant was tried, for *Sparks* was decided more than two years after petitioner in this case filed his motion on the prosecution's use of peremptory challenges and long after petitioner's trial was over. When petitioner filed his pretrial motion, he was subject to the same law that had allowed the defendant in *Sparks* to object even after the jury had been sworn. The very holding in *Sparks* was that the defendant was not procedurally barred from raising a *Batson* claim after the jury had been sworn and given preliminary instructions, and after the trial court had held a lengthy hearing on an unrelated matter. The court entertained the claim as having been raised "relatively promptly" because no prior decision of the Supreme Court of Georgia had required an earlier objection.

To apply *Sparks* retroactively to bar consideration of a claim not raised between the jurors' selection and oath would therefore apply a rule unannounced at the time of petitioner's trial and consequently inadequate to serve as an independent state ground within the meaning of *James*. Indeed, the Georgia court itself in *Sparks* disclaimed any such effect for

that decision. It was only as to cases tried *"hereafter* [that] any claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn." 257 Ga., at 98, 355 S. E. 2d, at 659 (emphasis added). This case was not tried "hereafter," and the rule announced prospectively in *Sparks* would not, even by its own terms, apply to petitioner's case. Since the rule was not firmly established at the time in question, there is no need to dwell on the further point that the state court's inconsistent application of the rule in petitioner's case and *Sparks* would also fail the second *James* requirement that the state practice have been regularly followed.[7]

## III

The Supreme Court of Georgia erred both in concluding that petitioner's allegation of an equal protection violation under *Swain* failed to raise a *Batson* claim, and in apparently relying on *Wainwright* v. *Sykes*, 433 U. S. 72 (1977). The *Sparks* rule, adopted long after petitioner's trial, cannot bar federal judicial review of petitioner's equal protection claim. The judgment below is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[7] The defendant in *State* v. *Sparks*, 257 Ga. 97, 355 S. E. 2d 658 (1987), was in an even less compelling posture than petitioner in this case because the *Sparks* defendant did not raise his claim before trial as did petitioner here. Thus, petitioner asserted his objection more promptly than the defendant in *Sparks* at a time when there was no special rule in Georgia on when a *Batson*-type claim must be raised.