**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES CURTIS DARDEN,
Petitioner-Appellant,

v.                                                                      No. 94-6353

TALMADGE L. BARNETT,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-92-691-HC-H)

Argued: October 30, 1995

Decided: January 8, 1996

Before RUSSELL, WILKINS, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Phillip Griffin, Jr., NORTH CAROLINA PRIS-
ONER LEGAL SERVICES, INC., Raleigh, North Carolina, for
Appellant. Rebecca Kendrick Cleveland, Associate Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney
General of North Carolina, Clarence J. DelForge, III, Assistant Attor-
ney General, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Curtis Darden appeals the decision of the district court denying his petition for habeas corpus relief pursuant to 28 U.S.C.A. § 2254 (West 1994). Because we conclude that Darden's claims lack merit, we affirm the judgment of the district court.

I.

Darden was convicted of first degree murder in North Carolina and was sentenced to life imprisonment in 1986. During the guilt phase of his capital trial, Darden testified on his own behalf, subjecting himself to cross-examination concerning a prior incident in his life that had resulted in an involuntary manslaughter conviction for killing Thurman Blackmon. After the jury returned a guilty verdict, but prior to the introduction of evidence in the penalty phase of the trial, Darden moved for a mistrial, asserting that he had just realized that he knew one of the jurors, Earl Stephens.

The state trial court conducted an evidentiary hearing on the motion at which Darden testified that Stephens had been Blackmon's friend and had known that Darden was responsible for Blackmon's death. According to Darden's testimony, Stephens knew Darden and had been dating his aunt at the time of Blackmon's death; this aunt lived near Darden's home, where Blackmon was killed, and was instrumental in seeking medical assistance for Blackmon at Darden's request. Although Stephens had denied knowing Darden or his family during voir dire, Darden sought to examine Stephens concerning his knowledge of the events surrounding Blackmon's death and possible bias against Darden.

The state trial court denied Darden's request to examine Stephens and his motion for a mistrial. It found that although Stephens had

2

been Blackmon's friend and had known that Darden was responsible for Blackmon's death, Stephens had not recognized Darden and, thus, had answered questions during voir dire truthfully. As for Darden, the trial court found that he either had failed to recognize Stephens during voir dire or purposefully had remained silent concerning their acquaintance hoping that it would operate to his benefit. Based on these findings, the state trial court denied Darden's request for a mistrial, reasoning that there had been no showing that Stephens could not be fair and impartial or that Darden had suffered prejudice as a result of the past acquaintance with Stephens.

On direct appeal to the Supreme Court of North Carolina, Darden first asserted that his constitutional right to an impartial jury was infringed by Stephens' presence on the jury. Darden claimed that he had adequately demonstrated that Stephens was actually biased because, although the juror had denied knowing Darden, Stephens possessed information about Blackmon's death and had been Blackmon's friend. Additionally, Darden maintained that even if he had not adequately demonstrated that Stephens was actually prejudiced, the circumstances required that the court presume prejudice. Finally, Darden contended that the refusal of the trial court to permit him to examine Stephens denied Darden his right to due process of law and that a new trial was required because a remand for a postconviction hearing would be inadequate to cure the manifestly unjust procedure from which he had suffered.

The Supreme Court of North Carolina rejected these arguments. State v. Darden, 372 S.E.2d 539, 540 (N.C. 1988). It ruled that the record presented to that court supported a conclusion that his request for a mistrial had been directed only to the sentencing phase of the trial, not the guilt phase of the trial. Id. And, since Darden had not been sentenced to death, but in fact had received the lowest sentence possible--life imprisonment--the court concluded that he could not have been prejudiced by alleged errors directed toward the sentencing phase. Id. Accordingly, the Supreme Court of North Carolina affirmed Darden's conviction and sentence.

Thereafter, Darden brought this § 2254 action claiming that the circumstances surrounding Stephens' deliberation during the guilt phase of the trial were such that the juror must be presumed to have been

3

biased, depriving Darden of his constitutional right to an impartial jury.**1** In addition, Darden asserted that the refusal of the state trial court to permit him to examine Stephens deprived him of his Fourteenth Amendment right to due process of law. The district court rejected the State's argument that Darden had procedurally defaulted these claims and ruled that the circumstances surrounding Stephens' service on Darden's jury did not give rise to a presumption of prejudice. The district court also concluded that Darden's right to due process was not violated by the refusal of the state trial court to permit Darden to examine Stephens. From this decision, Darden appeals.**2**

---

**1** Darden named Talmadge L. Barnett as respondent, but for ease of reference we refer to the respondent as the State.

**2** Initially, we note that we cannot accept the State's assertion that review of Darden's claims is barred because he procedurally defaulted them. See Coleman v. Thompson, 501 U.S. 722, 729 (1991) (Generally, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). The State correctly asserts that the district court improperly relied on reasoning expressly rejected by Coleman to conclude that the decision of the Supreme Court of North Carolina was not based on an independent state procedural rule; we find inescapable the conclusion that the Supreme Court of North Carolina rested its rejection of Darden's claims on the basis of his failure to properly preserve the error for review --a state-law determination that is binding on us, see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Nevertheless, the federal question remains whether the independent ground for decision on which the state court relied is adequate to foreclose federal habeas review. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988). We determine that it is not. See Ford v. Georgia, 498 U.S. 411, 423-25 (1991); James v. Kentucky, 466 U.S. 341, 348-49 (1984). In order to constitute an adequate procedural bar, a state procedural rule must be "firmly established and regularly followed" at the time it is applied. Ford, 498 U.S. at 423-24 (internal quotation marks omitted). Darden argued before the state trial court that during the guilt phase of the trial, Stephens' knowledge of the events surrounding Blackmon's death may have improperly biased him against Darden; the ruling by the state trial court denying Darden's request for a mistrial can be read to have rejected this claim; and Darden properly raised the issue in his direct appeal to the Supreme Court of North Carolina. We have found no

4

II.

The constitutional "right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, `indifferent' jurors." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).**3**  Neither the Supreme Court nor this court has yet to squarely address whether, under appropriate circumstances, an implication may arise that a juror was biased against the defendant. <u>See Smith v. Phillips</u>, 455 U.S. 209, 221-24 (1982) (O'Connor, J., concurring); <u>Person v. Miller</u>, 854 F.2d 656, 664 (4th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1011 (1989). And, we need not decide this question today. To the extent that an implication of bias may be appropriate, the doctrine is limited "to those extreme situations where the relationship between a . . . juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." <u>Person</u>, 854 F.2d at 664 (citing <u>Smith</u>, 455 U.S. at 222 (O'Connor, J., concurring) (setting forth examples of the types of drastic factual scenarios in which an implication of bias might be proper)). Stated differently, an implication of bias might be appropriate only when "the `potential for substantial emotional involvement, adversely affecting [the] impartiality'" of the juror, is inherent under the circumstances. <u>Tinsley v. Borg</u>, 895 F.2d 520, 527 (9th Cir. 1990) (quoting <u>United States v. Allsup</u>, 566 F.2d 68, 71 (9th Cir. 1977)), <u>cert. denied</u>, 498 U.S. 1091 (1991). The circumstances presented to this court plainly do not satisfy this criteria.

Darden contends that Stephens' acquaintance with Blackmon, along with the juror's failure to bring the friendship to the attention

_____

North Carolina authority "firmly establishing" that Darden was required to take additional action to preserve the question of Stephens' bias with respect to the guilt phase of his capital trial, as opposed to the sentencing phase. Accordingly, we conclude that the independent state-law ground relied upon by the State is inadequate to prevent habeas review.
**3** The Due Process Clause of the Fourteenth Amendment guarantees the right to a jury trial in all state criminal cases which would come within the right to a jury trial guaranteed by the Sixth Amendment if the trial were conducted in federal court. <u>Morgan v. Illinois</u>, 504 U.S. 719, 726 (1992).

5

of the court, created an implication that the juror was biased against Darden. However, Darden chooses to ignore the particulars giving rise to a competing inference. Although Stephens knew Blackmon, the juror also was friendly with Darden and his family, having dated his aunt and socialized with his father. And, while it is true that the juror failed to bring his acquaintance with Blackmon to the attention of the court, it is equally true that Stephens failed to apprise the court of his friendship with Darden and his family. Thus, the circumstances do not necessarily require an implication of bias against Darden. Indeed, it seems equally likely that Stephens was favorably disposed to Darden.[4] Consequently, we cannot conclude that these circumstances warrant a finding of implied bias.

III.

Darden also asserts that he was deprived of his Fourteenth Amendment right to due process of law when the state trial court refused to permit him to examine Stephens to attempt to prove actual bias and, accordingly, that he is entitled to a new trial. We disagree.

The Supreme Court has made clear that

> due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

_____

[4] Although not germane to our decision, we note that all indications point to the conclusion that Darden recognized Stephens early in the proceedings, but failed to bring the relationship to the attention of the court, believing that given Stephens' failure to acknowledge the relationship, the failure to do so would work to his benefit. For example, during voir dire, Stephens candidly acknowledged that his son had been the victim of a homicide and that the perpetrator of that crime had been prosecuted by the same solicitor prosecuting Darden. Unless Darden had reason to believe that Stephens would be favorably disposed toward him, it is inconceivable that Darden would not have moved to strike Stephens from the venire.

Smith, 455 U.S. at 217. A defendant's right to due process is not violated, and a juror need not be presumed to be biased, merely because a question concerning a juror's partiality is raised after the verdict has been rendered. See id. at 215. Instead, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id.

It is undisputed that Darden was provided with an evidentiary hearing in which he had the opportunity to prove that Stephens was actually biased. But, Darden claims that this hearing was inadequate because he was not permitted to examine Stephens. We, however, need not decide whether due process demands that Darden be given an opportunity to examine Stephens to attempt to prove actual bias. See generally United States v. Boney, No. 94-3149, 1995 WL 612901, at *4-6 (D.C. Cir. Oct. 20, 1995) (holding district court abused its discretion in failing to permit thorough examination of a juror to determine actual bias).

A post-trial hearing to inquire into a juror's alleged bias is sufficient to satisfy due process. See Smith, 455 U.S. at 215-17. Yet, Darden has expressly and repeatedly declared that he does not seek a post-trial examination of Stephens. In his direct appeal to the Supreme Court of North Carolina, Darden argued that a new trial should be awarded because "[a] remand for postconviction hearing would not be adequate at this juncture to remove a serious question of whether defendant has suffered from manifestly unjust procedures." J.A. 254. Further, Darden expressly disavowed a request for an opportunity to examine Stephens in his brief to this court.[5] Moreover, in response to questions during oral argument, counsel for Darden informed the court that throughout the many years since the trial, no attempt has been made to contact Stephens to obtain the information that might have been explored during a hearing. As a post-trial examination of Stephens is adequate to satisfy due process, and as Darden has not sought an opportunity to examine the juror post-trial,

_____

[5] Darden claimed that a hearing to permit him to examine Stephens at this juncture would be unavailing. See Br. of Appellant at 22. ("At this point, an evidentiary hearing to allow [for the examination of Stephens] would not change anything. Juror [Stephens] is not likely to acknowledge bias now, nor should this court accept any such denial of bias.").

7

we conclude that Darden's incarceration cannot be said to be a result of a constitutional deprivation. See Smith, 455 U.S. at 221.

IV.

For the foregoing reasons, the decision of the district court denying Darden's petition for habeas relief is

AFFIRMED.

8