RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0198p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 13-5625

CHRISTOPHER TOMLINSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cr-20160—Jon Phipps McCalla, District Judge.

Decided and Filed: August 20, 2014

Before: DAUGHTREY, CLAY and STRANCH, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Valentine C. Darker, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. S. Keenan Carter, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

───────────────

**OPINION**

───────────────

STRANCH, Circuit Judge. Christopher Tomlinson appeals his conviction by jury for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The issue before us is whether Tomlinson raised a timely objection under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the government's use of its first five peremptory strikes to remove African Americans from the jury. We conclude that Tomlinson's *Batson* objection was timely because he raised it before the jury was sworn and the trial commenced. We therefore REVERSE the district court's

1

ruling that Tomlinson waived his *Batson* challenge by failing to raise it at a point earlier in the *voir dire*. We REMAND the case to the district court for a *Batson* hearing.

## I.  FACTS AND PROCEDURAL HISTORY

In June 2012, a grand jury charged Tomlinson with unlawful possession of a Marlin .35 caliber rifle on March 21, 2012, in violation of § 922(g)(1). Represented by an Assistant Federal Public Defender, Tomlinson proceeded to jury trial in January 2013.

The first day of trial was devoted entirely to choosing the jury. The jury venire included approximately 36 prospective jurors, but the record does not disclose the precise racial composition of the venire.

At the beginning of jury selection, the district court awarded Tomlinson ten peremptory challenges and the government six. The court initially filled the jury box with fourteen prospective jurors. The court and counsel extensively questioned the jurors. Challenges for cause were granted, and the court called additional jurors from the venire. After both parties passed for cause the fourteen prospective jurors seated in the jury box, the court asked counsel to exercise simultaneous peremptory strikes.

During the first round of peremptory challenges, the government exercised three strikes and the defense exercised five. Because one juror was challenged by both parties, the court charged the peremptory strike to the government. As a result, the defense had six strikes remaining, and the government had three. The court asked if either party objected to the strikes of the other party. Both counsel responded that they had no objections. The court then excused the seven jurors who were struck and allowed them to leave the courthouse immediately. The court called more prospective jurors to the box.

After seven additional jurors were passed for cause, the court asked for a second round of peremptory challenges. The government did not exercise any strikes, but the defense exercised four. The government had no objection to the defense strikes. The court excused the four jurors struck by the defense, and called four more to the jury box. The same qualifying process continued.

In the third round, the government used two peremptory strikes and the defense used one, leaving each side with one remaining peremptory strike. Neither party objected to the other's strikes. The court excused the three jurors who were struck, and called three more to the jury box.

In the fourth round, each party exercised its last peremptory strike. Tomlinson objected to the government's last strike against Ms. Jackson, an African American juror, stating: "I think we are going to bring a *Batson* challenge. I think all of the strikes by the government were African-Americans, and this last one is also an African-American." R. 75 Page ID 288. The court ruled that Tomlinson had waived any objection to the government's first five peremptory strikes by failing to object earlier. The court initiated the *Batson* inquiry with respect to the government's strike of Ms. Jackson. After the prosecutor stated her race-neutral reasons for striking Ms. Jackson, defense counsel renewed her *Batson* objection. She asked the court to consider that all six of the government's peremptory strikes were used against African American jurors.

The court analyzed Tomlinson's *Batson* objection only with respect to Ms. Jackson. The court explained why it was persuaded that the government's strike of Ms. Jackson was not based on race. The court filled the final two seats on the jury and excused the last four prospective jurors who were not needed for jury service. The trial continued the following day, and the jury convicted Tomlinson as charged.

## II. ANALYSIS

The government violates the equal protection component of the Fifth Amendment's Due Process Clause if it uses peremptory challenges to exclude prospective jurors from the petit jury on account of their race. *Batson*, 476 U.S. at 86, 89; *United States v. Angel*, 355 F.3d 462, 471 (6th Cir. 2004). "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86. The harm caused by racial discrimination in choosing a jury extends beyond the defendant to affect "the entire community" and "undermine public confidence in the fairness of our system of justice." *Id.* at 87. The burden to prove purposeful discrimination is on the defendant, who must initially establish a *prima facie* case. *Id.*

at 95–97. Once he does so, the burden shifts to the prosecution to give a race-neutral reason for the peremptory strike. *Id.* at 94, 97–98. The court must then determine whether "the defendant has established purposeful discrimination." *Id.* at 98.

The issue before us is whether, in order to preserve a *Batson* claim, a party must object contemporaneously to his opponent's use of a peremptory strike. We hold that a strictly contemporaneous objection is not required and that a party's *Batson* objection is timely if it is made before the jury is sworn and the trial commences. Our holding is rooted in *Batson*, *Ford v. Georgia*, 498 U.S. 411 (1991), and cases decided by other federal circuits.

In *Batson*, the challenge to the prosecutor's use of peremptory strikes against African American jurors was deemed timely because, before the jury was sworn, the defendant moved to discharge the jury as unconstitutionally selected. *Batson*, 476 U.S. at 83, 100. As in this case, Batson's challenge was summarily rebuffed and he was convicted at trial. Because the trial court did not require the prosecutor to explain the reasons for the peremptory strikes, the Supreme Court remanded the case for further proceedings, instructing that, "[i]f the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioners' conviction be reversed." *Id.* at 100.

In light of various jury selection practices followed in state and federal courts, the Supreme Court declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges" and made "no attempt to instruct these courts how best to implement" the *Batson* holding. *Id.* at 99 & n.24. The Court expressed "no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." *Id.* (cited cases omitted).

A few years after *Batson*, the Supreme Court considered the application of a procedural rule adopted by the Supreme Court of Georgia requiring that "'any claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn.'" *Ford v. Georgia*, 498 U.S. 411, 422 (1991) (quoting *State v. Sparks*, 355 S.E.2d 658, 659 (Ga. 1987)). The Court observed

that requiring "any *Batson* claim [to] be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule." *Id.* The Court ultimately concluded, however, that the Supreme Court of Georgia erred in applying *Sparks* to Ford, whose trial occurred before *Sparks* was decided. *Id.* at 424. Because *Sparks* did not establish an independent and adequate state-law ground to bar Ford's *Batson* claim, the Court reversed and remanded for further proceedings on the *Batson* claim. *Id.* at 425.

The federal circuits have not settled on a single rule for assessing the timeliness of *Batson* objections. Some courts take the view that a *Batson* objection is timely if it is made as soon as possible or by the close of *voir dire*. *See e.g.*, *United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992); *Gov't of Virgin Islands v. Forte*, 806 F.2d 73, 75–76 (3d Cir. 1986). Other courts find a *Batson* challenge timely if it is raised before the jury venire is dismissed and before the trial commences. *See e.g.*, *Morning v. Zapata Protein (USA), Inc.*, 128 F.3d 213, 216 (4th Cir. 1997); *United States v. Parham*, 16 F.3d 844, 847 (8th Cir. 1994); *United States v. Maseratti*, 1 F.3d 330, 335 (5th Cir. 1993)); *United States v. Romero-Reyna*, 867 F.2d 834, 837 (5th Cir. 1989). Still other courts take the position that a *Batson* challenge is timely if it is "made as soon as possible and preferably before the jury is sworn." *See e.g.*, *United States v. Contreras–Contreras*, 83 F.3d 1103, 1104 (9th Cir. 1996)).

Each of these rules recognizes the practical necessity of selecting the time frame for a *Batson* objection that provides sufficient time for counsel to ascertain the propriety of an objection (as to one strike or a pattern of strikes) while the jurors are still present, thereby alleviating premature *Batson* objections, hasty determinations of *Batson* waivers, and post-trial *Batson* inquiries. On the other hand, each rule acknowledges the importance of assuring that both the *Batson* inquiry and the trial will proceed efficiently. These rules and ours fall within a comparable time frame, one that fairly balances these pragmatic concerns.

Tomlinson raised his challenge to the government's first five peremptory strikes of African American jurors before his jury was sworn and the trial began. *See Batson*, 476 U.S. at 83, 100; *Ford*, 498 U.S. at 422. Yet, by utilizing a jury selection procedure that forced Tomlinson to raise his *Batson* objection earlier or waive it, the district court placed defense counsel in an untenable position. Early in the jury selection procedure, defense counsel could

not fully appreciate whether the government's use of peremptory challenges formed a pattern of strikes against African American jurors.  *See Batson*, 476 U.S. at 97 (recognizing that a pattern of strikes "in the particular venire might give rise to an inference of discrimination.").  *See also Rice v. White*, 660 F.3d 242, 255 (6th Cir. 2011) (addressing argument that peremptory strike, considered in context with two prior strikes, violated *Batson*, without commenting on timeliness of the objection).  After successive rounds of jury selection, however, it became clear to Tomlinson's counsel that the government was using its peremptory challenges to strike only African Americans from the jury.  Tomlinson raised his *Batson* objection immediately after the government cast its sixth peremptory strike against an African American juror.  By the time Tomlinson's counsel determined in her professional judgment that a *Batson* objection was warranted, the court had allowed previously-removed jurors to leave the courthouse, complicating any potential *Batson* inquiry.

We recognize, as the Supreme Court did in *Batson*, that district courts employ various methods for choosing juries, *see id.* at 99 n.24, and our opinion should not be read as requiring any particular method of jury *voir dire*.  But our holding recognizes as timely any *Batson* challenge that is made before the jury is sworn and the trial commences, no matter which method of jury selection is used.

Our opinion is consistent with the decision in *United States v. Russ*, 508 F. App'x 377 (6th Cir. 2012), where the district court employed a jury selection procedure similar to the one used at Tomlinson's trial.  After the government's third peremptory challenge, defense counsel objected to the removal of two jurors, but the court "faulted defense counsel for failing to object while the jurors were still in the courtroom and could be questioned regarding the objection." *Id.* at 379, 383.  On appeal it was evident to this court that the district court "completely short-circuited the *Batson* analysis" because the court deemed the defense objection untimely.  *Id.* Relying on *Batson* and *Ford*, we reversed and remanded for further proceedings.[1]  *Id.* at 386.

---

[1]In another decision, this court held that a *Batson* objection first raised after the jury venire was dismissed and after the jury was sworn was untimely.  *United States v. Peraza*, 25 F.3d 1051 (table), 1994 WL 228244, at *2 (6th Cir. 1994)).  But *Peraza* does not control here because Tomlinson did not wait until after the venire was dismissed and the jury was sworn to object to the government's peremptory strikes.  *See id.*

The decisions of the Supreme Court in *Batson* and *Ford* and the instructive opinions of other circuits lend support to our holding that a *Batson* objection is timely if it is made before the jury is sworn and the trial commences. Tomlinson's *Batson* objection to the government's use of its first five peremptory challenges to remove African Americans from the jury was timely under this rule.

## III. CONCLUSION

Accordingly, for the reasons stated, we REVERSE the district court's ruling that Tomlinson waived his *Batson* challenge and we REMAND the case for further proceedings. We instruct the district court to hold a *Batson* hearing and make findings on whether Tomlinson established the existence of purposeful race discrimination in the selection of his jury that warrants reversal of his conviction. *See Batson*, 476 U.S. at 100; *United States v. McAllister*, 693 F.3d 572, 582–83 (6th Cir. 2012); *United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999). Because *Batson* error is structural and is not subject to harmless error review, only reversal of the conviction and a new trial could remedy any *Batson* error found. *See Kimbrel*, 532 F.3d at 468–69; *Harris*, 192 F.3d at 588.