(896 P.2d 1106)

No. 71,577

STATE OF KANSAS, *Appellee,* v. DOUGLAS A. HEISKELL, *Appellant.*

—

Opinion filed June 9, 1995.

*David R. Gilman,* of Overland Park, for appellant.

*Scott C. Rask,* assistant county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before ELLIOTT, P.J., GREEN, J., and MARLA J. LUCKERT, District Judge, assigned.

GREEN, J.: Douglas A. Heiskell was charged with one count of cultivation of marijuana and with one count of possession of marijuana with intent to sell. After a jury trial, Heiskell was convicted of both counts. On appeal, Heiskell contends (1) the trial court erred in determining that the State had given a valid race-neutral reason for striking the only African-American venireperson from the jury panel; (2) the trial court erred in denying his motion for new trial for juror misconduct; (3) the trial court erred in admitting evidence on how much marijuana an average marijuana user would consume; and (4) the evidence was insufficient to convict him of either cultivating marijuana or possessing marijuana with intent to sell. We disagree and affirm.

On October 8, 1992, Dudley Foster, a state wildlife conservation officer, was investigating a report of wild turkey poaching. After seeing signs of a fresh turkey kill, Foster followed car tracks from the site until he spotted a gun protruding from a car window. Believing the car's driver was responsible for the turkey kill, Foster decided to follow the car. After a short time, the car stopped along the road and two men appeared from the nearby woods and began talking to the driver. When Foster neared the car, the two men fled back into the woods and the car drove away.

Foster decided to follow the two men. When he saw the two men lying in the weeds, one of the men jumped up and ran. Foster gave chase, but the man evaded him. Meanwhile, the second man, later identified as David Woodworth, got up and ran down the road. Eventually, Foster captured Woodworth.

After several deputies arrived to assist Foster, he went back to the area where he had seen Woodworth and the other man lying in the weeds. He discovered a black trash bag containing marijuana. The deputies also discovered three patches of mature marijuana plants. Foster and several deputies later testified that the marijuana plants had been planted and tended by someone because the area had been weeded and the plants had been fertilized. Foster and the deputies cut down 172 marijuana plants. The plants and the bag of marijuana weighed 120 pounds.

Meanwhile, another deputy stopped Heiskell as he walked down a county road about ¾ of a mile from the marijuana patch. Claim-

ing to be looking for his lost dog, Heiskell was wearing a checkered shirt, blue jeans, and a blue-colored jacket. Previously, Foster had described the man who had fled as wearing a light-colored sweatshirt and blue jeans. The deputy arrested Heiskell. Heiskell's hands were covered with dirt and a green substance. In addition, his hands smelled of marijuana. A later test of the green substance showed it contained THC, the active ingredient in marijuana. Heiskell was charged with one count of cultivating marijuana and one count of possession of marijuana with intent to sell.

After the jury had been selected and sworn and after the State had presented its first witness, Heiskell moved for a dismissal or, in the alternative, for a mistrial. Heiskell claimed the State had used one of its six peremptory challenges to improperly strike A.D., the only African-American venireperson. The State stated it had a race-neutral reason for striking A.D. The State claimed that it thought A.D. was related to a person whose assignment to community corrections had been revoked previously because of a drug violation. The trial court denied Heiskell's motion.

After the jury convicted Heiskell on both counts, he filed a motion for new trial and for judgment of acquittal. In his motion for new trial, Heiskell renewed his objection to the State's peremptory strike of A.D. and raised a claim of juror misconduct. After Heiskell's motions were denied, this appeal was timely filed.

Heiskell argues the trial court abused its discretion in finding the State had offered a race-neutral reason for striking the only African-American venireperson. See *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). He contends the reason articulated by the State was insufficient to justify the strike as racially neutral. In response, the State argues it gave a race-neutral reason for striking A.D.

Before we consider this issue, we must first resolve two questions. First, to preserve a *Batson* claim of discriminatory use of a peremptory strike, does a party have to raise the claim in a timely manner? Although this issue has not been addressed in Kansas, we held no reversible error occurred when the State was permitted to use its six remaining peremptory strikes after the two defendants had fully exhausted their strikes. We pointed out that defendant

had failed to make a timely objection to the method used by the trial court in exercising the parties' peremptory strikes. *State v. Heck*, 8 Kan. App. 2d 496, 504-05, 661 P.2d 798 (1983). Although not directly on point, *Heck* does support the view that a timely challenge to an improper use of a peremptory strike must be made to avoid its waiver.

Second, when must a party raise a *Batson* claim of discriminatory use of a peremptory strike for it to be timely? Several other jurisdictions have considered this issue, and they all have determined that a timely *Batson* claim must be made before the jury is sworn. *State v. Parker*, 836 S.W.2d 930, 935 (Mo. 1992); *People v. Harris*, 151 App. Div. 2d 961, 962, 542 N.Y.S.2d 411 (1989). Moreover, the failure to make a timely objection waives any argument based upon *Batson*. *Parker*, 836 S.W.2d at 935. In discussing the timely objection rule, the Fifth Circuit Court of Appeals stated:

"'The 'timely objection' rule is designed to prevent defendants from 'sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten. Furthermore, prosecutorial misconduct is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson. After trial, the only remedy is setting aside the conviction. *Batson*, 106 S. Ct at 1725. This is an equally important justification for the 'timely objection' rule." *U.S. v. Forbes*, 816 F.2d 1006, 1011 (5th Cir. 1987).

Similarly, during oral argument, Heiskell's counsel stated that he deliberately waited until after jeopardy had attached before making his *Batson* claim. As pointed out by the *Forbes* court, a timely objection rule would prevent this type of "sandbagging." Consequently, to preserve a timely claim of discriminatory use of a peremptory strike, a defendant must raise the claim before the jury, or the last juror including any alternates, is sworn. Because Heiskell intentionally waited until after the jury had been sworn before making his *Batson* claim, we conclude that he failed to preserve this issue for our review.

Heiskell next argues the trial court erred in denying his motion for new trial based upon juror misconduct. He alleges one juror, M.B., had stated a predisposition against him and this denied him

a fair trial. In explaining the standard of review for a juror miscon-
duct case, our court declared:

" 'Misconduct of jurors *per se* does not necessitate a new trial, but misconduct
which results in prejudice to a litigant and impairs his right to a fair and impartial
trial requires a new trial. [Citations omitted.] It is for the trial court to determine
in the first instance whether misconduct on the part of the jury has resulted in
prejudice to a litigant, and its judgment thereon will not be overturned unless
abuse of discretion is manifest.' " *State v. McGraw*, 19 Kan. App. 2d 1001, 1013,
879 P.2d 1147 (1994).

Here, the only evidence of juror misconduct was an affidavit
from a venireperson who was removed earlier because of his bias
in favor of Heiskell. He claimed that while seated in the courtroom,
he overheard M.B. state: "If that is Doug Heiskell, I know he's
guilty." No further evidence or information was presented con-
cerning M.B.'s alleged statement. Based upon this scant evidence,
the trial court denied Heiskell's motion for new trial because he
had failed to show any juror misconduct.

When allegations of juror misconduct occur, "the determination
of a witness' credibility in such circumstances is within the trial
court's discretion." *State v. Macomber*, 244 Kan. 396, 408, 769 P.2d
621, *cert. denied* 493 U.S. 842 (1989). The trial court questioned
the venireperson's statement, given his bias for Heiskell. Moreover,
the trial court did not believe any impropriety occurred. Finally,
although Heiskell had the opportunity to obtain the testimony of
actual jurors to support his motion for new trial, he failed to do so.
Accordingly, Heiskell has failed to show the trial court abused its
discretion in denying his motion for new trial.

Heiskell next argues the trial court erred in admitting testimony
on average marijuana use to establish his intent to sell marijuana.
He contends the State presented no evidence to establish the basis
for the expert's testimony. He also claims the training and experi-
ence of a police officer does not qualify him or her as an expert on
average marijuana consumption. In explaining the admissibility of
expert testimony, our Supreme Court stated:

" 'The admissibility of expert testimony is within the broad discretion of the trial
court. A party claiming an abuse of trial court discretion bears the burden of
showing abuse of discretion. The test on appellate review of whether the trial

court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision.' *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, Syl. ¶ 8, 822 P.2d 591 (1991)." *State v. Cheeks*, 253 Kan. 93, 99, 853 P.2d 655 (1993).

Here, the controversy involves the testimony of Lieutenant William Blundell of the Labette County sheriff's office. Blundell testified that an average weight of a marijuana cigarette is .3 grams and the average user of marijuana smokes 11 cigarettes a day. Using these estimates, Blundell calculated the 20 pounds of marijuana found in the black bag would be a one-year supply for 7½ people. Further, based upon a selling price of $35 per quarter ounce, the 20 pounds would have been worth $44,800.

It is unnecessary, however, to address these arguments because Heiskell has failed to preserve the issue for appeal. A defendant cannot object to the introduction of evidence on one ground at trial and then assert a different objection on appeal. *State v. Skelton*, 247 Kan. 34, 44, 795 P.2d 349 (1990).

Here, instead of objecting to Blundell's testimony because of his lack of expertise, Heiskell objected to Blundell's testimony solely on relevancy grounds. For example, after the State asked Blundell "the average number of marijuana cigarettes that are smoked by an average user of marijuana," defense counsel made the following objection: "Judge, I would object to average users and average this and average that. This is not a statistical study. This is a crime that's been charged against this defendant, and we would object to the use of statistics in terms of trying to prove an element of this offense." Here, Heiskell's objection focuses only on the relevancy of the evidence. Moreover, Heiskell's objection clearly failed to alert the trial court that he was also challenging Blundell's qualifications to testify on this subject. Because Heiskell failed to make a specific objection to Blundell's qualifications to testify, he has failed to preserve this issue for our review.

Heiskell finally argues the evidence is insufficient to convict him of either cultivating marijuana or possessing marijuana with intent to sell. He contends the State presented no evidence to show he cultivated marijuana. He also contends the State presented no ev-

idence to show that he possessed marijuana or that he intended to sell marijuana.

The standard of review when the sufficiency of the evidence is challenged is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found defendant guilty beyond a reasonable doubt. *State v. Bailey*, 251 Kan. 156, 163, 834 P.2d 342 (1992).

## CULTIVATION OF MARIJUANA

Cultivation of marijuana is the intentional planting or promoting the growth of five or more marijuana plants. See K.S.A. 1994 Supp. 65-4101(aa); PIK Crim. 3d 67.15. These elements may be proved by circumstantial evidence. *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 (1988).

Heiskell argues the State presented no evidence that he cultivated marijuana on October 8, 1992. Although not entirely clear, it appears Heiskell's argument is twofold. First, he contends no evidence was presented connecting him to the marijuana patches. Second, assuming *arguendo* that the evidence does place him near the marijuana, he contends the picking or handling of marijuana does not establish cultivation. These arguments are flawed.

As to the marijuana patches, the State presented evidence that shows: (1) two men were sighted near the marijuana patches and fled when confronted by Foster; (2) shortly thereafter Heiskell was stopped less than ¾ of a mile from the marijuana patches, walking on a county road; and (3) Heiskell's hands were muddy, stained with an active ingredient in marijuana, and smelled of marijuana. Viewing the evidence in a light most favorable to the State, there was sufficient evidence to allow a rational factfinder to conclude Heiskell was one of the two men picking the marijuana.

Next, Heiskell argues the State has not shown he cultivated marijuana on October 8, 1992. He argues, without citing any authority, that picking marijuana is not evidence of cultivation. This argument, however, misunderstands what the State had to prove. Here, the complaint alleged Heiskell had cultivated marijuana on or about October 8, 1992.

The State presented evidence that the marijuana patches had been tended and cared for because the patches were weeded and fertilized. The police counted 172 marijuana plants growing in the patches. And the marijuana patches were not visible from the road. Viewing the evidence in a light most favorable to the State, there was sufficient evidence to allow a rational factfinder to find beyond a reasonable doubt that Heiskell cultivated the marijuana discovered by Foster.

## POSSESSION OF MARIJUANA WITH INTENT TO SELL

Possession of marijuana with intent to sell requires proof of possession of marijuana and an intent to sell. K.S.A. 65-4127b; PIK Crim. 3d 67.14. Possession of marijuana is having control over the marijuana with the knowledge and the intent to have control. See *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 3, 551 P. 2d 1247 (1976). Proof of an intent to sell " 'may consist of evidence as to quantity of the narcotic, equipment found with it, place it was found, manner of packaging, and opinion of experts that the narcotic was packaged for sale.' " *State v. Smith*, 4 Kan. App. 2d 149, 151, 603 P.2d 638 (1979). These elements may be proved by circumstantial evidence. *Anthony*, 242 Kan. at 502.

Heiskell first argues there was no evidence to establish he had possession of the bag of marijuana. As noted previously, the State presented circumstantial evidence to show he had control over the bag before he fled. From this evidence a rational factfinder could find Heiskell had possessed the bag of marijuana.

Next, Heiskell argues there was no evidence to show the 20 pounds of marijuana in the bag were intended for sale. Citing *Smith*, he contends the quantity of marijuana standing alone is insufficient to prove an intent to sell. The *Smith* court held that one pound of marijuana, found in a brick form, by itself was insufficient to establish proof of an intent to sell. 4 Kan. App. 2d at 151. In reaching this conclusion, however, the court stated: "[T]here was no evidence as to the amount reasonably necessary to satisfy the personal desires of a consumer. We are not prepared to say that one pound is a little or a lot for defendant's personal

use, and cannot believe the jury was any better equipped to make this determination than are we." 4 Kan. App. 2d at 151.

The State argues *Smith* is distinguishable from the facts presented here and, thus, not controlling. Specifically, the State contends Blundell's testimony that 20 pounds of marijuana would satisfy an individual's consumption for 7½ years, establishes the marijuana was more than an amount reasonably necessary to satisfy the personal desires of a consumer. We agree. Moreover, the jury heard evidence that the police officers discovered not only one patch of marijuana, but also discovered two other patches of marijuana. The officers also noted that the paths linking the three patches were well travelled. Accordingly, the evidence showed the amount of marijuana gathered by Heiskell exceeded the reasonable personal needs of an average marijuana user. Consequently, a rational factfinder could believe beyond a reasonable doubt that Heiskell had possessed marijuana with intent to sell.

Affirmed.